MERIDIAN YELLOW CAB CO. *v.* CITY YELLOW CABS

In Banc. June 13, 1949.

(41 So. (2d) 14)

Dunn & Singley, for appellant.

814

815

816

817

818

J. V. Gipson and Champ C. Gipson, for appellee.

## Smith, J.

Appellant filed its original bill of complaint in the Chancery Court of Lauderdale County, praying· that ". . . the defendant, City Yellow Cabs, be permanently enjoined from using the corporate name, City Yellow Cabs or any corporate name containing the words 'Yellow Cabs' or any corporate name similar to the corporate name of complainant''; and for general relief.

The suit was predicated upon the claimed protection of appellant by Section 5322, Code of 1942, as follows: "No corporation shall be created under the laws of this state with the name of any existing corporation of this state nor with the name of any company or corporation

for profit incorporated under or by virtue of the laws of any government, or of any other state or territory, now or hereafter doing business in this state which has heretofore filed or may hereafter file in the office of the secretary of state of Mississippi a copy of its charter or articles of incorporation or certificate of incorporation, as required by the laws of this state, or with a name so similar thereto as to be misleading.''

The facts, as developed in the record before us, are that both appellant and appellee are chartered under the laws of Mississippi, domiciled at Meridian, and doing a similar taxicab business in said city. The corporate name of appellant is ''Meridian Yellow Cab Co., Inc.'' and that of appellant is ''City Yellow Cabs''. On the sides of the cabs of both companies under their respective names in small lettering are the words ''Yellow Cab'' in large letters. The cabs of appellant are yellow all over except the tires, and those of appellee are yellow all over except for the hood, fenders and tires.

Appellant was incorporated November 30, 1945. Appellee's charter was granted February 13, 1948, and it seems to have begun the operation of its taxicabs promptly, while those of appellant were not put on the streets until two months later, approximately. Both concerns are now actively engaged competitively in the taxicab business in the City of Meridian. The delay in the actual start of its operations by appellant is not explained in the record. While on the witness stand, and under cross-examination, the president of appellee company, with reference to the phrase, ''Yellow Cab'', was asked:

''Q. Does it identify any particular kind of taxi service to your mind, Mr. Johnson? A. Yes, and no, there is more than one yellow that the cabs have.

''Q. Does it identify any particular kind of cab service to you with or without yellow, Mr. Johnson? A. I say yes.

"Q. In your opinion, personal opinion, does 'Yellow Cab Company,' constitute an asset to the taxicab business A. To a certain extent, yes."

Appellee averred in its answer: "Answering further, defendant alleges that from November 30, 1945, until April, 1948, that the complainant did no advertising, operated no automobile as a Taxi and had no established place of business and did not until about two months after the defendant began to operate it's automobiles in it's Taxi Business under it's Charter that it secured from the State of Mississippi, according to law and that was approved by the Attorney General of the State of Mississippi, and the Governor and the Secretary of the State of Mississippi, according to law and for which the defendant paid the Charter fees." Appellee, also by its answer, raised the further point that public officials are presumed to do their duty and to know the law and facts in the premises of performing it; ". . . and, therefore, at the time that the Attorney General, the Governor and the Secretary of State of the State of Mississippi approved and granted the Charter of the defendant and accepted the Charter fees, that they then knew that the complainant secured it's Charter in November, 1945, but had not gone into business, purchased any automobiles, done any advertising, operated any Taxies, for which it's Charter was granted, and that under said facts and circumstances, such officers held that the City of Meridian, Mississippi, was entitled to have Taxi Service such as the defendant is furnishing and that the complainant had no legal right to secure a Charter and decline to use same from November, 1945, until February, 1948, when defendant's Charter was granted and still prohibit the granting of a Charter to the defendant as waiting that long to begin business could be construed to mean that it would not go into business at any time under it's Charter on the theory and under the old adage that 'a dog should not decline to gnaw a bone himself and at the same time prohibit anyone else from gnawing the bone.' "

No proof of the averments as to the knowledge of the above stated officers was made. In fact, there is little evidence in the record, and no conflicting testimony. The learned Chancellor announced his decision in these words: "The Court holds in this case that names of the complainant and the defendants are not so similar as to mislead the public"; and dismissed the bill of complaint, and 'complainant appealed from the decree accordingly entered.

It is a question of law that confronts us. Does the statute quoted, supra, protect appellant, as claimed by it, under the circumstances of this case, and entitle it to an injunction as prayed? In other words, the appellant relies upon the statute for justification of its position rather than the general run of precedents based upon trade-names and trade-marks. The attitude of appellee is that appellant misconstrues the statute; that the chartering State Officers were, so to speak, an adjudicating board, and their grant to appellee of its charter, after the grant to appellant, adjudicated the issue now before the court, in favor of appellee, and its judgment should not be disturbed; and that, under the circumstances of this case, and the applicable law, the court should not grant an injunction "to prohibit the defendant (appellee here) from continuing to operate it's Taxi Business under it's Charter".

The question is not without difficulty. However, the primary approach to its solution is to determine the purpose of the statute, and this must be done here by consideration of its language. The Legislature certainly had the accomplishment of some objective by the passage of Section 5322, supra. Deleting therefrom provisions as to foreign corporations, we find that "No corporation shall be created under the laws of this state with the name of any existing corporation of this state . . . or with a name so similar thereto as to be misleading." This brings us down to the issue, initially, are the names

"Meridian Yellow Cab Company, Inc." and "City Yellow Cabs" so similar as to be misleading?

A broad general rule is laid down in 66 A. L. R. 952, where it is said "Courts of equity are frequently called upon to remedy conditions which grow out of the use by a corporation of a name similar to the name of another corporation carrying on a business of the same character. In such cases it is usually, if not always, true that relief is granted because experience has demonstrated that the public is misled, and the corporation first established is defrauded on account of the similarity of names. We assume that the statutes referred to were intended to prevent, to some extent, the conditions which, in such cases, when they arise, make a resort to the courts necessary."

American Jurisprudence lays down the practice to be that "The inquiries when equitable relief is sought must be whether it is likely that the public will be misled and whether the complaining corporation is likely to be injured. Experience, not in the particular case, but in other cases, must be employed in determining the fact. Mere conjecture is not sufficient. Moreover, whether the court will interfere in a particular case must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporation; how far the name is a true description of the kind and quality of the articles manufactured or the business carried on; the extent of the confusion which may be created or apprehended; and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy." 13 Am. Jur., Par. 137, page 274.

The Supreme Court of Oregon observed that the authorities justified the conclusion that primarily it is not the name which is protected, but the business. Federal Securities Co. v. Federal Securities Corp., 129 Or. 375, 276 P. 1100, 66 A. L. R. 934. And "Injunctive relief may be obtained to the same extent, and on the same

principles, by which individuals are protected in the use of trade-marks and trade-names." 18 C. J. S., Corporations, § 173, p. 576.

"It has been held that it is not necessary to prove that the public has actually been deceived by the similarity in names. It is the liability to deception and consequent injury which justifies the issuance of an injunction. If the court can see that confusion and deception are liable to result from the similarity in names, it will not refuse injunctive relief because the damage has not already been done." M. M. Newcomer Co. v. Newcomer's New Store, 142 Tenn. 108, 217 S. W. 822, 826. It is to be borne in mind that our statute, Section 5322, Code 1942, supra, is along the same line, concluding with this language: "or with a name so similar thereto as to be misleading."

Appellee largely depends on the doctrine of "clean hands" in their brief, charging that the charter of appellant lay dormant from November 1945 to April 1948, and it took no steps toward embarking upon business until the latter date, approximately two months after appellee had initiated its business under its charter, and quotes from Blackwell's Durham Tobacco Co. v. American Tobacco Co., 145 N. C. 367, 399, 59 S. E. 123, 126, as follows: "It cannot be the law that three or more persons may, either under our general corporation law or by special act of the Legislature, become incorporated by any name which they may select for the purpose of engaging in some branch of trade or manufacture, and thereby, without engaging in the business of buying, selling, or manufacturing the article or product named in its charter, acquire a perpetual monopoly in the corporate name. This would be to create a monopoly in a corporate name without ever using it by legislative enactment and violation of our fundamental law and the well-settled policy of the state." It is to be observed here that while appellants waited a considerable time before engaging in its chartered business, it did not do so perpetually.

In our judgment, a well-reasoned opinion, expressing a sound and reasonable view, was delivered by the Delaware Court, in Drugs Consolidated, Inc. v. Drugs, Inc., 16 Del. Ch. 240, 144 A. 656, 657: "It certainly cannot be the intention of the act to require a corporation created under it to become engaged in its corporate business in a material and physical sense, as a prerequisite to the undisturbed enjoyment of the protection of its corporate name which the statute affords. ▮▮ It would seem rather to be more consonant with rational and practical interpretation to say that as soon as the corporate existence is brought into being and as long as it continues; the right assured by the statute to have the corporate name distinguished from other corporations of like kind subsequently created is free from encroachment. The statute thus removes the necessity of showing actual use in business of the name, a use which many cases dealing with the general law of unfair competition require as a prerequisite to relief in trade-name and trade-mark controversies."

Among other cases cited by appellee in its argument here is McKay v. Legler, 36 So. (2d) 793, 794, (not yet reported in State Reports), involving "Old Southern Tea Room" and "Jackson Olde Southern Tea Room." The former was doing business in Vicksburg and the latter in Jackson. In the case at bar, both parties are engaged in the same business in the same community, and each has on the side of its taxicabs, in large letters, "Yellow Cab". The McKay and other cases cited by appellee along similar lines, in view of our statute, are not in point on the precise issue before us.

Appellee also argues: "It is presumed that at the time the charter of the appellee was granted that the Attorney General, Secretary of State and the Governor of this State all knew that the charter had been granted to the Appellant prior thereto, and it is also presumed that they further knew that Appellant had not engaged in business or used it's charter from November, 1945, to the

granting of Appellee's Charter, and had not spent any money advertising it's business and that Section 5322 of Mississippi Code of 1942 was properly construed by them when Appellee's Charter was granted by them and when Appellee's Charter was granted in the light of the then existing circumstances and facts, and the law presumes every officer does his duty properly as required by law and that applies to the said officers that approved of and granted Appellee's Charter.''

However, the authorities seem to be against the contention of appellee. It is laid down in 13 Am. Jur. 275, par. 138, that: ██ ''In granting a corporate charter, the state does not thereby adjudicate the legal right of the corporation to the unlimited use of the name chosen; and the name, though derived through authority of the state, may not be used in a manner which will result in fraud or deception.''

██ This proceeding was brought, as stated supra, under our statute, Section 5322, Code 1942, which prohibits the creation of a corporation under the laws of this state "with the name of any existing corporation of this state . . . or with a name so similar thereto as to be misleading.'' Since we have decided that the name "City Yellow Cabs" is so similar to that of "Meridian Yellow Cab Company, Inc.", as to be misleading, this statute was transgressed to that extent, and, therefore, appellee could not lawfully operate under its misleading name in the City of Meridian, and environs, in competition with appellant in a manner that confused the public by the misleading nomenclature. We are not to be considered as holding, by what we have just said, that appellee could not operate elsewhere under its chartered name, "City Yellow Cabs", beyond the competitive sphere of the two taxicab companies, as shown in the record.

██ The remedy of the aggrieved corporation, even in the absence of a statute, is based upon the rule that "parties organizing a corporation must choose a name at its peril; and the use of a name similar to one adopted

by another corporation, . . . if misleading and calculated to injure it in the exercise of its corporate functions, regardless of intent, may be prevented by the corporation having the prior right, by a suit for injunction against the new corporation to prevent the use of the name, . . . To restrain the wrongful assumption of a name by a corporation is not to annul the corporation by depriving it of a name. If restrained from using a name chosen, it may choose another name. There can be no distinction in principle between taking the entire name of the prior corporation and taking so much of it as will mislead dealers into the belief the two corporations are the same. The mischief is of precisely the same character, differing only in degree." "Similarity and not identity is the usual recourse where one corporation seeks to benefit itself by the good name of another." 13 Am. Jur., Corporations, Sec. 135.

In a footnote to the foregoing text, it is said that in Canada, by statute, one corporation may apply to the registrar to compel a change in the name of another and need not bring suit. However, it is noted there that in the United States the statutes generally leave the injured corporation to its remedy in the courts, citing 66 A. L. R. 1021.

Therefore, we reverse the decree of the Chancery Court, and enter a decree here restraining appellee from operating its taxicab business in the City of Meridian under its name "City Yellow Cabs", and from utilizing the words "Yellow Cab or Cabs" upon its cabs, or otherwise, in its said business in the City of Meridian, or environs, so long as appellant, "Meridian Yellow Cab Company, Inc." is also engaged in the taxicab business in said area.

Reversed and decree here for appellant.