DOLLAR DEPARTMENT STORES OF MISSISSIPPI, INC. *v.*
ALVIN LAUB d.b.a. THE DOLLAR STORE.

No. 41486 May 2, 1960 120 So. 2d 139

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellant.

*Laub, Adams, Forman & Truly,* Natchez, for appellee.

710

LEE, J.

 █ Alvin Laub, the owner of a department store in the City of Natchez, Mississippi, doing business under the trade name of "The Dollar Store", by his bill of complaint sought to obtain an injunction against The Dollar Department Stores of Mississippi, Inc., a corporation, which would restrain it from using at any store in that city the trade name "The Dollar Department Stores", "Olen Dollar Dept. Stores" or any other similar trade name which would be likely to mislead, deceive, and create confusion in the minds of the public. The answer of the defendant denied all of the material allegations of the bill.

At the conclusion of the evidence, the court made a detailed finding of fact, and announced his conclusions of law. He held that "Dollar Store" is the complainant's trade name; that such designation has acquired special significance as a secondary meaning, and is not a generic name for the goods sold by the parties; that defendant was guilty of constructive fraud; and that the trade name, as used by the defendant, infringes upon the trade name of the complainant and results in unfair competition. A decree was entered agreeably to the findings and in accordance with the prayer of the bill; and the corporation appealed.

The material facts, not in substantial dispute, were as follows: In 1928 "The L. A. Smith Dollar Store" was

opened at 512 Franklin Street in Natchez, Mississippi. Thereafter this business was purchased by Alvin Laub and Max Ulman in 1932. They changed the name to "The Dollar Store". When Ulman died in 1945, Laub became the sole owner. At all times since 1932 it has been in continuous operation under the same name and at the same location. The store sold clothing of all kinds for men and women, shoes, bedding, etc., commonly referred to as "soft goods", at prices ranging from a few cents to approximately $24.00. There has never been a limitation on sales to one dollar or the multiples thereof. Advertising was carried on through newspapers, by circulars, and over the radio. A majority of the customers were colored and working people. There was no other store by that name in the city. When the name "Dollar Store" or "The Dollar Store" was used in the city, it was understood to be the store of the complainant at 512 Franklin Street.

The Dollar Department Stores of Mississippi, Inc., was chartered by the State of Mississippi on April 9, 1957. At first it operated a store at 629 Franklin Street under the name of "Serve Yourself Department Store", on the opposite side of the street and in the adjacent block approximately 500 or 600 feet from "The Dollar Store". On May 21, 1958, the corporation changed its trade name. The opening under that name was accompanied by newspaper and radio advertising in which the names "The Dollar Department Store" and "The Dollar Store" were used. Laub protested the use of such trade name and the corporation changed the name to "Olen Dollar Dept. Stores". This store handled principally "soft goods", but it did also sell "hard goods". Substantially all of its merchandise was priced in even dollars or multiples thereof. No other stores were operating in this manner in the city until May 1958. Customers of the store were colored, working people, and also educated and wealthy ones.

After this new store was opened there was, from time to time, misdelivery of mail and merchandise of the two stores and confusion among their customers.

The appellant contends that the word "Dollar" is in the public domain, descriptive of a type of merchandising; that the words "The Dollar Store" are not susceptible of monopolization as a trade name; and that "Olen Dollar Dept. Stores" is not so similar to "The Dollar Store" as to be misleading and confusing to the public to such an extend as to warrant the issuance of an injunction.

In the early case of Delaware & H. Canal Co. v. Clark, 80 U. S. 311, the opinion pointed out that there are some limits to the right of selection of a trade name. It was there said: "The trade mark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association. And there are two rules which are not to be overlooked. No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection." Likewise in Amoskeag Mfg. Co. v. Spear, 2 Sandf. 599, it was said that "the owner of an original trade-mark has an undoubted right to be protected in the exclusive use of all the marks, forms or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, figures or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or a sym-

bol, which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ, for the same purpose.'' Both of the above cases were cited with approval in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537. See also C. F. Simmons Medicine Co. v. Mansfield Drug Co., 93 Tenn. 84.

In Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, the court was dealing with the question of words, descriptive of a class, and it was held that they could not be exclusively appropriated by anyone. The opinion mentioned such names as ''Wine Company'', ''Cotton Company'' or ''Grain Company'', and held that the use of such trade names ''would in no respect impair the equal right of others engaged in similar business to use similar designations, for the obvious reason that all persons have a right to deal in such articles, and to publish the fact to the world.''

In subsequent decisions, however, the controversies, which have been passed upon by the courts, have been myriad. Under the later cases, unquestionably trade names are much more easily established.

Restatement of the Law of Torts, Section 716, p. 558, defines trade names as follows: ''A trade name is any designation which (a) is adopted and used by a person to denominate goods which he markets or services which he renders or a business which he conducts, or has come to be so used by others, and (b) through its association with such goods, services or business, has acquired a special significance as the name thereof, and (c) the use of which for the purpose stated in Clause (a) is prohibited neither by a legislative enactment nor by an otherwise defined public policy.'' In Comment (a) thereunder it is explained that such designation does not become a trade name until it has become known in the markets for the products that it represents. When that occurs, such special significance becomes the primary meaning. See also Comment (b) thereunder to the effect that

whether or not a designation has acquired such special significance is a question of fact in each case.

In 52 Am. Jur., Trademarks, Tradenames, etc., Section 54, page 541, it is said in part: "A protectible right in the use for trade purposes of a word in common use may be acquired under the doctrine of secondary meaning." See also Section 55, page 541 thereof, as follows: "A generic word or term may, however, by usage, acquire a secondary, special or trade meaning as indicating the goods or business of a particular person, so as to entitle him to protection against any unfair or piratical use or simulation thereof by another." See also Sections 72, 73, and 74 thereof. Callman, Unfair Competition and Trademarks, 2d Ed., Section 77, page 1223, et seq., contains a thorough discussion of the acquisition of trade names by priority under the doctrine of secondary meaning. Many cases are cited under Section 77.4(c) and (d) in which words of common usage as well as descriptive, generic and geographical words, not otherwise fanciful or arbitrary, as trade names or marks, were protected because they had acquired a secondary meaning.

Typical of such doctrine is Blair's Foodland Inc. v. Shuman's Foodland Inc., 40 N. E. 2d 303, from the Supreme Judicial Court of Massachusetts, in which it was held that the plaintiff, who had built up a successful grocery business under the trade name of "Blair's Foodland Inc." was entitled to an injunction against the defendant, which had subsequently commenced a similar business about one and one-half miles away under the trade name of "Shuman's Foodland Inc.", so as to prevent the defendant's use of the word "Foodland".

To the same effect was Little Tavern Shops, Inc. v. Davis, 116 Fed. 2d 903, from the 4th Circuit Court of Appeals, where it was held that the plaintiff, who had operated eating shops in Baltimore, Md., under the trade name of "Little Tavern Shops, Inc." for a period of 12 years, was entitled to an injunction against the de-

fendant who was operating a food and liquor store in the city under the name of "Hubbard's Little Tavern Liquors", with emphasis on the words "Little Tavern", to restrain the defendant from the use of the words "Little Tavern" in his business. On the question as to whether there had been such an appropriation of the plaintiff's name as to entitle it to relief, the opinion said: "The rule is that a person's trade name is infringed when another uses the identical or a confusingly similar trade name as the designation of his business, even though he does not use it for purposes of deception. It is sufficient if the natural and probable consequence of his acts is to pass off his business as that of the plaintiff."

In Meridian Yellow Cab Co. v. City Yellow Cabs, 206 Miss. 812, 41 So. 2d 14, the Court held that the names "Meridian Yellow Cab Co., Inc." and "City Yellow Cabs" were so similar as to be misleading, and, at the instance of Meridian Yellow Cab Co., Inc., enjoined City Yellow Cabs from continuing to operate its taxicabs under that name in the City of Meridian and its environs. The word "Yellow" is about as common as any word in the English language. The opinion in that case cited 13 Am. Jur., Corporations, Section 137, page 274, to show that equity is concerned with whether it is likely that the public will be misled and whether the complaining party is likely to be injured, saying that whether the court will interfere "must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporation; how far the name is a true description of the kind and quality of the articles manufactured or the business carried on; the extent of the confusion which may be created or apprehended; and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy."

The decision in Meridian Yellow Cab Co. case, supra, was consonant with McKay Legler, Miss., 36 So. 2d 793,

where apparently the principal reason for not issuing an injunction was the absence of competition between "Old Southern Tea Room" in Vicksburg and "Jackson Olde Southern Tea Room" in Jackson.

Manifestly the appellee, from his long use of "The Dollar Store" or "Dollar Store", selected, designated, and thus acquired these words as the trade name for his business. The special significance of the words ripened into and became their primary meaning, that is, the trade name of the appellee in the City of Natchez. The term "Dollar" in this case, contrary to appellant's contention, cannot be limited in its meaning as being merely descriptive of a type of merchandising.

The Meridian Yellow Cab Company case, supra, is directly in point to overrule the appellant's contention that there is no such similarity between "Olen Dollar Dept. Store" and "The Dollar Store" as to be misleading and confusing to the public to the extent that the issuance of an injunction was warranted.

■■ ■ The evidence was sufficient to show that the trade name of the appellant, as used at that time, infringed upon the well established trade name of the appellee and thereby resulted in unfair competition. If the use of similar names results in confusion or unfair competition, the use is constructively fraudulent even though the act may be done innocently. Cockrell v. Davis, 198 Miss. 660, 23 So. 2d 256; Meridian Yellow Cab Co. v. City Yellow Cabs, supra; Little Tavern Shops, Inc. v. Davis, supra; Stork Restaurant Inc. v. Sahati, 166 Fed. 2d 348.

■■ ■ It is true that the appellant is incorporated under the laws of this State, but that does not mean that it has the legal right to the unlimited use of that name. Although it derives its name through the authority of the state, that name cannot be used in a manner which will result in fraud and deception. 13 Am. Jur., Corporations, Section 138, page 275; Meridian Yellow Cab Co. v. City Yellow Cabs, supra.

It is clear from this record that the learned chancellor was fully warranted in ordering the issuance of an injunction in this matter, and it therefore follows that his decree should be affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.