257 So.2d 877 (1972)
Jack M. RICHARDSON
v.
James Russell THOMAS.
No. 46477.
Supreme Court of Mississippi.
January 31, 1972.
*878 Mitchell M. Lundy, Grenada, for appellant.
Thomas, Price, Alston, Jones & Davis, Jackson, for appellee.
RODGERS, Presiding Justice:
This appeal came to this Court from the Chancery Court of Grenada County, Mississippi. The Chancery Court enjoined the appellant Jack M. Richardson from doing business under the name "Ham House", or from using the trade name "Ham House" in any manner whatsoever. The appellant was enjoined from using this name in his advertisement or in the usage of like coloring imitation of appellee's advertisement. The Court also awarded the complainant, appellee here, a monetary judgment of five thousand dollars ($5,000.00). The Court also sentenced the appellant to a sixty-day jail sentence (suspended), and to pay a fine of two hundred and fifty dollars ($250.00).
The appellant has appealed and contends that (1) The Court was in error in holding that the name "Ham House" was subject to judicial protection; (2) The Court erred in finding the appellant guilty of contempt of court by changing from "Ham House" to the use of "Jack's Country Hams" as a trade name; (3) In any case the appellant should not be required to pay damages to appellee; and (4) The Court coerced the appellant to act to his disadvantage by threatening him with a jail sentence.
The dispute between the appellant and appellee arose under the following circumstances. The appellant was the owner of a certain place of business in Grenada County near Interstate Highway No. 55 known as Jack's Ham House. He had by careful business management created a substantial retail business, and had obtained a good reputation for the sale of fine meat not only in Grenada County, but also with transit customers. The appellant sold his business and leased his building to the appellee with the right to purchase at a later date. Appellant was of the opinion that the appellee was going to buy his meat from Jack Eaton, but this was not made a part of the contract.
When the appellee failed to purchase meat from Jack Eaton, the appellant decided to go back into the meat business. He opened a new Ham House between the business sold to appellee and Interstate Highway No. 55 under the name "Jack's Hamhouse" along about April 28, 1969.
The appellee, purchaser of the original business, began operating the business under the sign "Ham House." He later used the trade name "The Original Ham House" and later he used "Russell Thomas Ham House."
The record reveals that much confusion arose between the two businesses. Their mail was often missent, and the appellee was constantly being subjected to inquiries and unfavorable comments because of the similarity of the two trade names. The appellee testified that he had lost considerable business from customers because of the unfavorable publicity growing out of the use of a similar business name by appellant. Appellee contended that he had lost thirty-five thousand dollars ($35,000.00) in sales and that his profit had been twenty percent (20%) of the gross sales.
On the other hand, the appellant contended that the alleged loss of business by the appellee grew out of his own lack of business acumen, particularly in the way he treated his customers and in his attempt to "doctor up" the meat products sold by appellee.
We think that the weight and worth of the testimony was for the Chancellor. He held that the use of a trade name by the appellant similar to that used by the appellee, his lessee, was confusing and did serious damage to the business of the appellee.
The primary issue for this Court to determine is whether or not the appellee had a legal right to prevent the appellant from *879 using a similar trade name to that used by the appellee in promoting his business purchased from the appellant.
Appellant bases his argument on the general statements of law that a generic word, or term, or a word, or a combination of words, which describe an article of trade cannot be appropriated as the trademark or a trade name to the exclusion of others. We are told by the authority cited, however, (52 Am.Jur. Trademarks, Tradenames, Etc., § 55, p. 541, 1944) that:
"... A generic word or term may, however, by usage, acquire a secondary, special, or trade meaning as indicating the goods or business of a particular person, so as to entitle him to protection against any unfair or piratical use or simulation thereof by another." 52 Am.Jur. at 541.
The above quotation was used by this Court in a similar case in upholding an injunction in the case of Dollar Dept. Stores of Mississippi, Inc. v. Laub, 238 Miss. 708, 120 So.2d 139 (1960). In that case the Court also quotes 52 Am.Jur. Trademarks, Tradenames, Etc., § 54, p. 541, (1944) and said:
"... A protectible right in the use for trade purposes of a word in common use may be acquired under the doctrine of secondary meaning."
In discussing the doctrine of secondary meaning at 52 Am.Jur. Trademarks, Tradenames, Etc., § 72, p. 554, (1944) it is said:
"It has previously been observed that a word, name, phrase, or symbol may be of such character as not to be originally susceptible of exclusive appropriation as a technical trademark of a tradename. It is established, however, that, subject to certain exceptions hereinafter noted, such a word, name, phrase, or symbol may nevertheless, by usage, where such use is not prohibited by law, acquire a secondary, special, or trade meaning as indicating or identifying the goods, business, or services of the user, and is distinguished from its primary, common, or general meaning, so as to entitle him to protection, under the law of unfair competition, against the subsequent unfair or piratical use thereof by another."
In Dollar Dept. Stores of Mississippi, Inc., supra, this Court cited Blair's Foodland, Inc. v. Shuman's Foodland, Inc., 311 Mass. 172, 40 N.E.2d 303, (1942), as being typical of the doctrine of secondary meaning. This Court said that the Massachusetts Supreme Judicial Court "... held that the plaintiff, who had built up a successful grocery business under the trade name of `Blair's Foodland, Inc.' was entitled to an injunction against the defendant, which had subsequently commenced a similar business about one and one-half miles away under the trade name of `Shuman's Foodland, Inc.', so as to prevent the defendant's use of the word `Foodland'." 238 Miss. at 715, 120 So.2d at 142.
The word "Foodland" appears to be equally as descriptive as the word "Hamhouse" with reference to what goods are offered for sale by the business bearing that name. In the case at bar the word "Hamhouse" became associated with the complainant's business and, therefore, it acquired a secondary meaning which is as protectible by injunction as the word "Foodland".
The Chancellor pointed out that dollars were not offered for sale in the Dollar Store case, and yellow cabs were not offered for sale in Meridian Yellow Cabs Co. v. City Yellow Cabs, 206 Miss. 812, 41 So.2d 14 (1949). Therefore, no prohibition against the establishment of those trade names to the exclusion of others is prohibited by the general rule of law prohibiting such exclusive appropriation of generic or descriptive words. The Dollar Store case was decided on the premise that the name "Dollar Store" used by the complainant "... ripened into and became their primary meaning, that is, the trade name of the appellee in the City of *880 Natchez." 238 Miss. at 717, 120 So.2d at 143.
The Chancellor was of the opinion in the case at bar that Staple Cotton Cooperative Assn. v. Federal Staple Cotton Coop Assn., 249 Miss. 465, 162 So.2d 867 (1964), was different from the Yellow Cab and Dollar Store cases in that Staple Cotton involved something for sale which was described by the name. However, in deciding Staple Cotton, this Court said:
"This case is controlled in all essential aspects by the Dollar Department Store of Mississippi v. Laub... ." 249 Miss. at 471, 162 So.2d at 869.
It is pointed out in 52 Am.Jur. Trademarks, Tradenames, Etc., § 82, p. 561, (1944) that some authorities require a showing of actual fraud on the part of the defendant. This Court dealt with the question of fraud in Dollar Dept. Stores, Inc., supra, wherein we said:
"... If the use of similar names results in confusion or unfair competition, the use is constructively fraudulent even though the act may be done innocently... ." 238 Miss. at 717, 120 So.2d at 143.
In the instant case the Chancellor found, as a determination of fact, that there was considerable confusion in the operation of the complainant's business as a result of the defendant's having knowingly used a similar name and similar advertisements, and was, therefore, guilty of constructive fraud.
It appears, therefore, that the right of the appellee to have his trade name protected from unlawful encroachment by the appellant is well settled by the case authorities above shown.
The issue as to whether or not the appellant was guilty of contempt of court in failing to obey the order of the court is also an issue of fact. The decree of the Chancery Court enjoined the appellant from "... doing business under the name `Ham House', and from using said name in any manner whatsoever in Grenada County, Mississippi." It also enjoined and restrained the defendant, appellant here, "... from advertising under that name or in any manner in colorable imitation of such name in the conduct of any business ... so as to palm off the goods of defendant as those of Complainant, ..."
After the court had entered its decree on August 20, 1969, the appellant placed signs along the highway and at his place of business advertising his business as "Jack's Country Hams." The signs were painted in similar colors to that of the appellee; the background on the sign was yellow and the lettering was done in "stick letters". In fact, the signs used by the appellant were in all respects similar to the signs used by the appellee. It was also shown that the appellant continued to use the name "Jack's Hamhouse" in the telephone directory, and the Chancellor found that appellant made no effort to comply with the order of the court and was therefore guilty of contempt of court. A careful reading of the record has convinced us that the Chancellor not only had ample testimony on which to base his finding, but we are driven to the conclusion that the Chancellor was correct in finding that the appellant deliberately and wilfully violated the injunction of the Court and was, therefore, in contempt of the decree of the Chancery Court. We think the evidence meets the test requiring the proof to be clear and convincing, expressed in Masonite Corp. v. International Woodworkers of America, 206 So.2d 171 (Miss. 1967).
It was the duty of the appellant to obey the decree of the Chancery Court. He had his day in court and the order was against him. He was required to obey the order in spirit as well as to obey it literally. See Equitable Life Assurance Society of United States v. Gex's Estate, 184 Miss. 577, 186 So. 659 (1939); Griffith's Mississippi Chancery Practice, 2d ed. § 450.
*881 We do not believe that the decree of the Chancery Court was unfair and inequitable simply because it required the appellant to perform certain acts in compliance with the injunction process before the decree was to have been entered in order to have suspended the jail sentence. Appellant's continued refusal to rectify his use of appellee's trade name would have justified the requirement that the defendant serve a term in jail.
The appellant argues that the evidence does not justify a money judgment against him. Our examination of the record reveals that the appellee, complainant, testified in detail about the gross loss of sales before and after the appellant went into business and to use his trade name. He testified that the total loss was approximately $35,000.00 and that he lost 20% profit or the sum of about $7,000.00. The Chancellor reduced this figure to $3,500.00 actual damages, and added $1,000.00 for impairment of goodwill and $500.00 general damages. The court acted properly in reducing the appellee's estimate of gross loss, because the appellant had a right to go into business and to sell hams and meat products with or without a sign so long as he did not violate the rule of fair trade by using the trade name of the appellee. The Chancellor was obviously trying to establish a figure from the evidence of damages due to the unlawful use of a sign or trade name by which the defendant, appellant, unfairly took from the complainant, appellee, trade that would have normally gone to him.
The plaintiff, appellee, was entitled to his actual profits made by the appellant as a result of the illegal use of the trade name previously used by the appellee or he was entitled to his loss of sales resulting from the illegal trade practice on the part of appellant. See the cases and authorities collected in 87 C.J.S. Trademarks, Etc., § 216, p. 617 (1954). See also 87 C.J.S. Trademarks, Etc. § 216, p. 621 (1954); Mooreman Givins v. Parkinson, 59 So. 122 (La. 1938).
The rule in Critz v. Southern Bell Telephone & Telegraph Co., 178 Miss. 323, 172 So. 510, 173 So. 430 (1937), permitting the court to allow damages for inconvenience and annoyance in addition to actual damages, gave the Chancellor the authority to add this item of damage to the actual loss of business as compensatory damages. We cannot say that the Chancellor was manifestly wrong in allowing this amount as an item of damage.
We find no reversible error in this record on appeal and for that reason the decree of the Chancery Court must be affirmed.
Affirmed.
JONES, BRADY, INZER and SUGG, JJ., concur.