COCKRELL *v.* DAVIS.

(In Banc.   Sept. 24, 1945.)

[23 So. (2d) 256.   No. 35904.]

Barnett, Barnett, Jones & Stone, of Jackson, for appellant.

**Watkins & Avery,** of Jackson, for appellee.

Argued orally by **Ross R. Barnett**, for appellant, and by **Ralph B. Avery**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

This case was appealed from a final decree of the Chancery Court of Hinds County, granting appellee an injunction by which appellant was restrained from the use of the name "Jimmie Davis" in any manner:
1. In connection with the writing of music;
2. The introduction of songs;
3. The endorsement of musical products and other things in any way connected with music;
4. The recordation and broadcasting of songs;
5. The recordation, or broadcasting by radio or television, or otherwise, of music by bands, orchestras or any combination of persons playing musical instruments;
6. Acting or appearing in motion pictures, stage productions or other public performances;
7. In connection with any musical program or performance of any kind in public;
but the defendant was not enjoined "from using his full name, James Davis Cockrell, or Jimmie Davis Cockrell."

The original bill charged that complainant's name, "Jimmie Davis," through his activities in the musical world, over the air, on the stage, in personal appearances, and musical recordations, and long continued publicized association with himself, "has taken on a new or sec-

ondary meaning which is entirely different from the primary meaning of the word as a man's name merely, and which has the legal effect and force of a trade name."

The appellee founded and organized a musical band, which accompanies his singing with music whenever he performs, which group is known as "Jimmie Davis and his Band." The defendant is also leader of a group of musicians, making public appearances, over the air, night clubs, and dances, using the names "Jimmie Davis and his Band," "Jimmie Davis and his Orchestra," and "Jimmie Davis and his Novoliers."

It is charged in the original bill that the persistent use by appellant (defendant below) of the name Jimmie Davis in connection with his public performances is a continuous trespass upon appellee's prior rights to the use of the name, and that appellee's (complainant below) only relief from continued infringement is an injunction to restrain appellant from such use of the name, and that otherwise appellee will suffer irreparable injury and has no adequate remedy at law to protect his right to the exclusive use of the name "Jimmie Davis" in music.

The appellant demurred that there was no equity on the face of the bill; and filed a motion to dissolve the temporary injunction granted appellee by the chancellor. In the motion (which was also an answer to the original bill) to dissolve, the defense of appellant was that appellee's name is James Harold Davis; that while appellee used the name "Jimmie Davis" in his musical activities, it is denied that the name "has come to be understood by the public as designating complainant herein any more, or as much as designating defendant. Defendant denies that the name 'Jimmie Davis' has taken on a new or secondary meaning entirely different from the primary meaning of the word as a man's name merely, and denies said name has the force and effect of a trade name." The motion and answer averred that appellant's name is James Davis Cockrell, and he has a right therefore to

use the name ''Jimmie Davis'' in his own musical activ-
ities as ''Jimmie Davis and his Band'' or ''Jimmie Davis
and his Novoliers''; denied infringement on appellee's
rights or capitalization upon the established reputation
of appellee. Appellant also averred that he plays swing
or dance music, while appellee plays Hill Billy music, and
that there is no competition between the two; that the
public is not deceived, nor has he attempted to mislead
the public. It was also denied that appellee has been
damaged by the operational use by appellant of the name
''Jimmie Davis'' in musical activities.

No action appears from the record to have been taken
on the demurrer, but the chancery court heard proof on
the issues involved, overruled the motion to dissolve and
permanently enjoined appellant from the use of the name
''Jimmie Davis'' as set out supra.

It was agreed that appellee, Jimmie Davis, is now
Governor of Louisiana; that Radio Station KWKH of
Shreveport, Louisiana, is readily heard in Mississippi,
and particularly in Jackson, and that if one Wyatt Sharp
were called as a witness for appellant, he would testify
that he is a professional musician, and that a large num-
ber of professional musicians operate under an assumed
name.

Further, the proof showed that appellee's name is Jim-
mie Davis, which name he signs to his checks and his
documents, and is the one by which he goes and by which
he is known. It appears, however, in his birth certificate
as James Houston Davis. He began his musical career
by broadcasting in 1928. He was early asked by Victor
Company to come to New York City and make records for
them. He did and a few months later returned and made
more records, all under name of ''Jimmie Davis.'' This
use of the name has continued from then ever since. He
made records for Victor six years, and was one of the
first artists Decca had, and has now been with them six
or seven years. He has produced approximately four
hundred records, sold all over the United States, Canada,

England, Australia and South America, and possibly other places. Such records were sold in Jackson, Mississippi, and throughout the United States.

Appellee has always had a band since the beginning of his musical career, most of the members of which have been with him since he started in 1928. He and his band broadcast from Shreveport; he has been interviewed regarding his musical work in Hollywood, where he also appeared as a guest artist. He has also been interviewed as a singer in Chicago, New York, Memphis, Dallas, Fort Worth and Houston, and has appeared in Nashville, Tennessee on the Saturday Night "Grand Old Opera." He has had some engagements in practically every state. Appellee has written over three hundred songs, including "You Are My Sunshine," "It Makes No Difference Now," and others. In connection with songs, appellee made song hits out of lyrics by others in permitting his name, on request, to appear on the title page, as featuring the same.

In Shreveport he plays over the radio, for civic clubs, churches and drives for bonds and other worthwhile causes, and also for occasional dances. He played at the World's Fair as a guest artist. His musical activities have been very profitable to him.

Some four or five months before the trial, he learned that he and his band had been confused with appellant and his band in Jackson by a "fan," who, learning by some form of advertisement that "Jimmie Davis and his Band" were playing at a certain road house, travelled a considerable distance to hear appellee, only disappointedly to discover that it was appellant and his band, and not appellee and his band. The advertisement used the title "Jimmie Davis" in the name of the musical group. Appellee also had letters with reference to the confusion of the bands, and other people, in Jackson, were confused as to the recordations of his music. While his group is a Hill Billy Band and his songs are written for that sort of musical organization, many of them have

been, and most of them now can be, adapted to use by orchestras playing swing or dance music, and often the leading dance bands of the Nation adapt them to swing orchestration. Appellee frankly disavows any claim to being an adept musician—he cannot read or write music with any technical skill. But his band can play any type of music.

The band of appellee is a string band and usually consists of five players, using piano, Hawaiian guitar, standard guitar, bass violin, and accordian, and sometimes a cello and a drum.

The appellant was baptized James Davis Cockrell, and has been known as Jimmie Davis Cockrell. He was born and reared in Mississippi. He is in dance music, has a swing orchestra, which he calls variously "Jimmie Davis and his Band," "Jimmie Davis and his Orchestra," and "Jimmie Davis and his Novoliers." This orchestra is usually composed of seven musicians, when playing at the radio station in Jackson, and elsewhere from ten to fourteen members. The instruments used in the main are drums, bass viol, guitar, piano, trombones, saxophones, and rhythmic bass.

About four and a half years before the trial, which was about twelve years after appellee started, the appellant was working for station WJDX in Jackson under the name of "Jimmie Cockrell and his Orchestra," and then subsequently was also employed at a road house near Jackson and played under the name of "Jimmie Davis" there. Since the road house did not have a good reputation at the time, to keep the jobs separate, he used the two names as stated. Later, he left the road house and used the name of "Jimmie Davis" exclusively in his musical activities, although he kept his bank account under the name of Jim D. Cockrell. He sometimes played the songs of appellee, but under a rearrangement adapting them to his style of band. He does not play outside of Mississippi, but plays for different occasions, at Jackson principally. Appellant claims not to know

much about appellee and his reputation, in his testimony. The members of his band must know and understand music, to read it, and to play by note, while a Hill Billy Band is not necessarily required to be so trained, so much so that the American Federation of Labor does not recognize Hill Billy Band performers as musicians entitled to membership as such in the Federation. There are other differences in the two bands, their music, personnel, and general audiences, not necessary to detail in this opinion.

Appellant's evidence was offered in an effort to sustain his contentions that he was not attempting to capitalize on appellee's reputation or to deceive the public, and that there is no competition between him and appellee, and hence no confusion of them by the public.

Here we have a situation in which appellee as "Jimmie Davis" for twelve years had been before the public as a singer, composer, radio and recording artist, achieving a local, national and international reputation, and recognition as "Jimmie Davis" in musical circles and audiences all over the world, selling records in Jackson, and Mississippi, and broadcasting from Shreveport over a station whose reception was good in Jackson, and Mississippi, where appellant was then playing over a Jackson broadcasting station as "Jimmie Cockrell," where, soon he was employed at a road house of bad reputation, so he started calling himself by only his baptismal names, so to speak, of "Jimmie Davis," and for no plausible justification stopped calling himself at the radio station "Jimmie Cockrell." In our judgment, the evidence does not sustain his claim that he was not capitalizing on the reputation and fame of appellee—on the contrary. We also are of the opinion that there has been, sufficiently proven, confusion on account of his using the name "Jimmie Davis" after it had acquired the attributes of a trade name, and had become identified with appellee in Jackson, in Mississippi, in the nation and internationally, and that opportunity exists for further confusion. We also

believe that sufficient proof of competition in the Jackson field is reflected in the record.

The courts are not in harmony on the right of appellee, or under what circumstances, to prevent the use of his own name by appellant, at least the given part of his name. But we are of the opinion, after carefully examining many decisions of the question, that most of them rest on basic principles, which generally ultimately harmonize. However, in our judgment, the weight of authority, and the better reasoned and more modern opinion is that here we have a case where injunctive relief to appellee as against appellant was proper.

Appellant cites 63 C. J. 431 which illustrates to some extent what we have just said above. The text supports the conclusions we have reached here and renders consistent with the central principle various views of the question. The right to use a personal name in business, even one's own, is subject to the general rules in regard to unfair competition. "Personal names must be used truthfully and in good faith, or their use will be enjoined. A man must use his own name honestly and not as a means of pirating upon the good will and reputation of a rival by passing off his goods or business as the goods or business of his rival who gave the name its reputation and value. No one will be permitted to use even his own name with the fraudulent intention of appropriating the good will of a business established and built up by another person of the same name. While the use of one's own name cannot be absolutely enjoined, nevertheless the manner of using it may be regulated by injunction. No person will be allowed to use even his own name in such a manner as to inflict an unnecessary injury upon another, and such as would not naturally result from the mere identity or similarity of names, but where the only confusion created is that which results from the similarity of names, the courts will not interfere." Carter v. Carter Electric Company, 156 Ga. 297, 119 S. E. 737; Meneely v. Meneely, 62 N. Y. 427, 20 Am. Rep. 489; Schinasi v.

Schinasi, 169 App. Div. 887, 155 N. Y. S. 867. No device or artifice, such as an imitative dress of goods, or an inconspicuous size of type, misleading advertisements, etc., will be permitted which will facilitate or increase the deception caused by the similarity of names. While a person may enjoin the unauthorized use of his name in the business of another, the court will not enjoin the use of a name in a locality where no competition exists. Loew's Boston Theatres Company v. Lowe, 248 Mass. 456, 143 N. E. 496, 36 A. L. R. 919.

Appellant cites in support of his contention the English case reported in Vol. 1, p. 518 of the Times Law Reports, Friday, August 3, 1934: "This was an action in which the plaintiffs, the Corporation of the Hall of Arts and Sciences (commonly known as the Albert Hall), claimed an injunction to restrain the defendant, Mr. Albert Edward Hall, of Orange Street, W., from using, for the purpose of his business as an orchestra conductor or otherwise, the name of 'The Albert Hall Orchestra' in such manner as to be calculated to induce the public to believe that such orchestra was connected with the Albert Hall." The court held that the defendant in adopting the name "The Albert Hall Orchestra" never thought of the "Albert Hall" and that it was a name which he had used earlier in Liverpool and elsewhere for some years and was adopted by him in good faith.

In the case cited by appellants, Schinasi v. Schinasi, 169 App. Div. 887, 155 N. Y. S. 867, the New York court held that no man may make a trademark of his own name and then debar others having the same name from using it in their business, and that every man has the absolute right to use his own name in his own business though he may thereby interfere with or injure the business of another person bearing his own name. However, the court further added the proviso that he must not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. It also held that

where the only confusion created is that which results from a similarity of names the courts will not interfere. In the case at bar, the appellant dropped his family name of "Cockrell" and used only his given names "Jimmie Davis," which, in our judgment, was an artifice when connected with the other circumstances of the case to capitalize on the established public acclaim received by appellee, Jimmie Davis, and which started and had been developed for more than twelve years before appellant ceased to operate under his own name of Jimmie Cockrell.

The case of Loew's Boston Theatres Company v. Lowe, 248 Mass. 456, 143 N. E. 496, 497, 36 A. L. R. 919, cited by appellant, in our judgment does not sustain his position on the facts because in the Lowe case the court held that where there is no trade, and hence no competition, there cannot be unfair competition, which is what the law protects against. "Such unfair interference by the defendant with the business of the plaintiffs was shown to exist in Boston; and the decree of the court affords a remedy. But the plaintiffs have no theatres in the cities outside of Boston where the defendant's theatres are." In the case before the Court now, there is competition in the City of Jackson and the State of Mississippi where appellant operates, in that appellant broadcasts from a radio station in Jackson while appellee broadcasts from a radio station in Shreveport, Louisiana, and both broadcasts afford good reception to the same public. In addition to that, the records and the songs of appellee are on sale in Jackson.

The consensus of the other authorities cited by appellant is to the effect that a man's name is his own property, and he has the same right to its use and enjoyment as he has to any other species of property if such use be a reasonable, honest, and fair exercise of such right, and that he would not be liable to another for incidental damage provided the use was made without intent to perpetrate a fraud upon others or indulge in unfair competition. Brown Chemical Company v. Meyer, 1891, 139

U. S. 540, 11 S. Ct. 625, 35 L. Ed. 247; Howe Scale Company v. Wyckoff, Seamans & Benedict, 1905, 198 U. S. 118, 25 S. Ct. 609, 49 L. Ed. 972; Royal Baking Powder Company v. Royal, 6 Cir., 1903, 122 F. 337, 58 C. C. A. 499; M. B. Fahey Tobacco Company v. Senior et al., D. C. 1917, 247 F. 809; Id., 3 Cir., 252 F. 579, 164 C. C. A. 495; Tomsky v. Clark, 1925, 73 Cal. App. 412, 238 P. 950.

We think on the facts in those cases, and in this case, that the conclusions of the court there, while apparently conflicting with our conclusions here superficially in some degree, do not substantially conflict because in the case we are now deciding it is our judgment that the adoption of the name "Jimmie Davis" by appellant, which was only the given part of his name, under the circumstances set forth by him, in view of the great local, national and international reputation and public appeal of the appellee, who had established the name of "Jimmie Davis," was not reasonable, in good faith or fair to appellee.

The appellant testified that he did not begin the use of the name "Jimmie Davis" in order to capitalize upon the wide recognition and established publicity attendant upon appellee's long prior use of the name. Even if this be conceded for consideration of the point, yet this cannot avail him here. As stated by Nims in Unfair Competition and Trade Marks, 3rd Ed., Sec. 318, p. 828: "It is always a question of fraud, but not necessarily of actual fraud. The act, however innocent, is considered constructively fraudulent, if the result would tend to unfair trade, to confusion of goods, and to interference with the rights of another."

The appellant's attempt to prevent injunctive relief to appellee on the ground of lack of competition, for reasons manifest from the facts, cannot succeed because there is competition, and also, as a corallary thereto, confusion in the minds of the general public as to the identity of the parties and the broadcasts, records, and songs. With reference to confusion, the Kentucky Court in

Artiste Permanent Wave Company v. Hulsman, 277 Ky. 414, 126 S. W. (2d) 850, 852, said:

"It is not necessary to show actual confusion; sufficient to show that confusion is probable or likely to occur."

The Washington Court said in Seattle Street Ry., etc., v. Amalgamated Ass'n of Street Electric Railway Employees, etc., 3 Wash. (2d) 520, 101 P. (2d) 338, 343:

"A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade-name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other. . . . The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

In Coty, Inc., v. Parfums de Grande Luxe, 2 Cir., 298 F. 865, the court held that the reasons for not requiring proof of a fraudulent intent in cases of infringements of trade marks apply with equal force in cases of unfair competition, the basis of the remedy being substantially the same. In both classes of cases the injury is the same regardless of the intent with which it is done. The court continued by pointing out that while there has been some difference of opinion, it is thought to be the better view that, where the necessary and probable tendency of defendant's conduct is to deceive the public and pass his goods as those of the plaintiff, especially where preventive relief only is sought, actual fraudulent intent need not be shown. And it has also been held that where an established business with a trade name representing good will is drawn into competition by a recent rival and so displayed as to be likely to mislead the public and the former's customers, the denial of a purpose to do so has little weight in defense of a suit to prevent such a wrong. Carter Transfer & Storage Company v. Carter, 106 Neb. 531, 184 N. W. 113.

We quote from Yale Elec. Corporation v. Robertson, 2 Cir., 26 F. (2d) 972, 974:

"It has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, nor divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

The following cases are to the like effect: Saxlehner v. Siegel-Cooper Company, 179 U. S. 42, 21 S. Ct. 16, 45 L. Ed. 77; Gehl v. Hebe Company, 7 Cir., 276 F. 271, 273; Hecker H-O Company, Inc., v. Holland Food Corporation, 2 Cir., 36 F. 2d 767, 768; Kann et al. v. Diamond Steel Company et al., 8 Cir., 89 F. 706, 707, 710; Gannert v. Rupert, 2 Cir., 127 F. 962; Consolidated Ice Company v. Hygeia Distilled Water Company, 3 Cir., 151 F. 10, 12.

With further reference to competition between the parties hereto, based upon appellant's contention that because his band is an orchestra composed of adept musicians playing dance and orchestral music, and the band of appellee is a Hill Billy band playing a different type of music, on mostly stringed instruments by members not playing by note, but by ear, we cite the note on page 53 of 148 A. L. R. Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc., Appt., 317 Ill. App. 451, 46 N. E. (2d) 165:

"Whatever may be the rule in an action predicated exclusively upon infringement of a trade mark, some of the earlier and the weight of the more recent cases support the rule sometimes called the 'Federal rule,' to the effect that relief, at least by way of injunction, in an ac-

tion for unfair fact that the goods, services, or businesses of the litigants are not in actual competition.

"As stated by Judge Learned Hand, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his trade mark (or trade name) outside the field of his own exploitation to justify interposition of a court. Under this view, the doctrine of unfair competition is not confined to cases of actual market competition between identical or similar products of the parties, but extends to all cases in which the use by a junior appropriator of a trade mark or trade name leads to a confusion of source, as where the infinger fraudulently seeks to sell his goods as those of the complaining party, or creates the belief in the public mind that his, the infringer's, wares are those of the mark owner, or where prospective purchasers would be misled into thinking that the complaining party has extended his business into the field.

"The doctrine is applicable not only where by the acts of the infringer, customers are misled to believe that the infringer's goods, services, or business are the complainant party's, but also where the impression is created that the complaining party has sponsored or approved or is in any way connected with the activities of the infringer, or that the latter is affiliated with or a part or a branch and subsidiary of the former.

"Since under the view stated in this subdivision actual competition is no longer a necessary element of an action of unfair competition, it has been held immaterial that the charter of a complaining corporation would not permit it to manufacture the goods to which the supposed infringer has applied the corporation's trade mark or trade name, or that at the time of the suit the law prevents actual competition by prohibiting the sale of the goods to which the complaining party has applied the trade mark or trade name in issue. . . .

"The rule that actual competition is no longer an indispensable prerequisite to relief in an action for in-

fringement of a trade mark or trade name or for unfair competition is applicable not only where the litigants deal in different goods and services, or are engaged in different business, but also where the parties, though dealing in the same or very closely related goods or services, solicit trade in different quarters or from different classes and are, for this reason, not in direct competition with each other, as where the plaintiff is a retailer and the defendant is a wholesaler, or where the plaintiff does not sell to the public but to wholesalers, whereas, the defendant sells directly to the public through retail stores. . . . ''

The Illinois Court held in the case annotated that where defendant's conduct is likely to cause the public to believe that the goods of the defendant are the goods of the plaintiff or that plaintiff is in some way connected with or is sponsor of the defendant, injunctive relief will be granted although there is no competition between the parties.

The cases in appellant's reply brief are all along the same general lines as those already discussed, and it is unnecessary to pursue the matter further. Suffice it to say, we are of the opinion therefore that ordinarily one has a qualified right to the use of one's own name in one's own business, qualified by the requirement of law that such use must be in good faith, and not result in confusion with a prior practically similar or identical name already established in business by another, or the likelihood of such confusion; or done with the intent to appropriate to one's business the benefits of the good will already substantially achieved by another in the use of the name, or that one's use of one's name must not provoke unfair competition with another already operating under the name in a successful use thereof in a general publicized activity within a vocation; or under circumstances present here without competition where, nevertheless, the other's good will forms a basis upon which one capitalizes on the effect of the instituted popular prevalence of the name to promote one's own business.

Since the action of appellant, as shown by the record, brings him within the scope of violation of the above qualifications upon his right to use the name "Jimmie Davis," we limit our decision to those conditions enumerated, and refrain from speculation upon effects of other situations not present in the record before us.

The decree of the chancery court is affirmed.

Affirmed.