ROBERTSON, Justice:
Appellant, Dixie Oil Company of Alabama, Inc. (hereinafter Dixie Oil), brought suit in the Chancery Court of Pearl River County to enjoin Appellee, Picayune “66” Oil Company, Inc., (hereinafter Picayune “66”), from using the term “Dixie Gas” as a trade name, and to cancel the registration of “Dixie Gas” as a trade name in the office of the Secretary of State of Mississippi.
The chancellor after a full hearing dismissed the bill of complaint and refused to grant any relief, and Dixie Oil appeals. We affirm.
Dixie Oil alleged in its bill of complaint that it was engaged generally in the business of selling gasoline and related products under the trade name of “Dixie Gas” in Lauderdale, Clarke, Hinds, Neshoba, Newton and Kemper counties, all in Mississippi; that Dixie Oil had started using the name “Dixie Gas” in 1960 or soon thereafter, and that it “has acquired the exclusive right to market gasoline and related petroleum products in the entire State of Mississippi under the name ‘Dixie Gas’.”
Dixie Oil admitted that it had not registered the term “Dixie Gas” with the Secretary of State, and admitted that Picayune “66” had registered “Dixie Gas” as a trade name with the Secretary of State in early 1969.
In its bill of complaint for injunction, Dixie Oil alleged that Picayune “66’s” use of “Dixie Gas” as a trade name “amounted to unfair competition and will cause complainant to be irreparably damaged.”
The separate answer of Picayune “66” denied the right of Dixie Oil to the exclusive use of the name “Dixie Gas” throughout the State of Mississippi, and denied that Picayune “66” was engaged in “unfair competition” because Picayune “66” only operated in Pearl River, Hancock and Harrison Counties, and only used its trade name “Dixie Gas” in those counties. Picayune “66” alleged that Dixie Oil neither offered for sale nor sold gasoline or any petroleum products whatsoever in Pearl River, Hancock or Harrison Counties, and that Picayune “66” neither offered for sale nor sold any gas or petroleum products in any of the six counties in which Dixie Oil operated.
The proof was that Picayune “66”, after consulting with its attorney and with no prior knowledge of the use by Dixie Oil of the term “Dixie Gas”, started using “Dixie Gas” as a trade name after being advised by the Secretary of State on November 8, 1968, that the name “Dixie Gas” was available for registration. On November 29, 1968, Picayune “66” ordered twelve “Dixie Gas” signs at a total cost of $3,538.-50, and registered “Dixie Gas” as a trade name with the Secretary of State in the Spring of 1969. The proof was that a distance of approximately 100 miles separated the sales areas of Dixie Oil and Picayune “66”.
The record also reflected that appellant used the exact words “Dixie Gas” at only a few of its stations, used the word “Crown” at one of its Meridian service stations, used signs with the word “Greetings” on top of a Confederate flag and the words “from Dixie” underneath the Confederate flag at most of its stations, and a similar symbol on its stationery.
The word “gas” is an abbreviation of the word “gasoline”, is a common *841 and generic word used by all of those engaged in the selling and marketing of gasoline, and is not capable of exclusive appropriation by any gasoline merchant. The word “Dixie” is a common geographical term, generally used to indicate the southern part of the United States. No proprietary rights can be acquired in a generic or geographical term.
52 Am.Jur. Trademarks, Tradenames, and Trade Practices, section 54 (1944), has this to say about such common, words:
“Words in common use are said to be the common property of the people, and no one can acquire an exclusive right to them by adopting them as his trademark, unless they are used out of their ordinary acceptation, and as a fancy name.” page 540.
In McKay v. Legler, 36 So.2d 793 (Miss. 1948), the owner and operator of the “Old Southern Tea Room” in Vicksburg brought suit in the Chancery Court of Hinds County to permanently enjoin the defendant from using the name “Olde Southern Tea Room” or “Jackson Olde Southern Tea Room”.
This Court affirmed the denial of an injunction, basing its decision primarily on the distance between Vicksburg and Jackson. In McKay, we said:
“We have concluded that a long as the ‘Jackson Olde Southern Tea Room’ is operated, and conducted, and its advertising and service limited, as shown in the record of the instant case, that the owners of the ‘Old Southern Tea Room’ in Vicksburg, under such existing circumstances, would not be entitled to the in-junctive relief sought.” 36 So.2d at 794.
In Cockrell v. Davis, 198 Miss. 660, 23 So.2d 256 (1945), this Court, in affirming the granting of injunctive relief, said:
“In the case before the Court now, there is competition in the City of Jackson and the State of Mississippi where appellant operates, in that appellant broadcasts from a radio station in Jackson while appellee broadcasts from a radio station in Shreveport, Louisiana, and both broadcasts afford good reception to the same public. In addition to that, the records and the songs of appel-lee are on sale in Jackson.” 198 Miss, at 671, 23 So.2d at 260.
But, we also said in Cockrell:
“While a person may enjoin the unauthorized use of his name in the business of another, the court will not enjoin the use of a name in a locality where no competition exists. Loew’s Boston Theatres Company v. Lowe, 248 Mass. 456, 143 N. E. 496, 36 A.L.R. 919.” (Emphasis added). 198 Miss, at 670, 23 So.2d at 259.
In addition to the fact that there was no competition between appellant and appellee, appellant has not made up its own mind as to the use of “Dixie Gas” exclusively. It uses the terms “Greetings From Dixie” and “Crown” at some of its stations. Even the credit card issued by appellant does not use the term “Dixie Gas” but rather uses a Confederate flag between the words “Greetings” and “From Dixie” as its symbol.
3 Callmann, The Law of Unfair Competition, Trademarks and Monopolies (Third Edition, 1969), Section 66.1, sets forth the rule to be followed in determining whether a trade name should be protected:
“The distinction, however, between technical and non-technical trademarks, with respect to the inception of the trademark right, persists today in the distinction between a mark which is valid per se, originating the moment it is appropriated and used in connection with a certain business, and a mark that does not emerge at its inception with the blessings of trademark validity. The latter mark, even though it is geographical or otherwise descriptive at birth, may eventually achieve legal status by acquiring a secondary meaning. It then sheds its congenital infirmity and becomes valid.” (Emphasis added), page 24.
*842 Ordinarily, secondary meaning is the result of gradual, steady growth traceable to a substantial investment in the enterprise and extensive distribution of numerous advertisements, circulars, labels, etc. 3 Callmann, The Law of Unfair Competition, Trademarks and Monopolies (Third Edition, 1969), Section 77.3.
The annotator in 150 A.L.R. at page 1079 (1944) has this to say in connection with the test to be applied in determining whether a trade name has acquired secondary meaning:
“Words and symbols used in connection with one’s goods, services, or business, or physical attributes of goods, not capable of being appropriated as a technical trademark, are deemed to have acquired a secondary meaning when they have become associated in the minds of purchasers or customers with the source or origin of the goods or services rather than with the goods or services themselves. In short, the test of secondary meaning is whether the mark has become broadly known throughout the public as denoting a product of certain origin.”
Appellant asserts that its transport trucks traveled Mississippi’s highways emblazoned with the words “Another Load of Dixie Gas”, and that from 1964 to 1968 some ten thousand automobiles roamed the highways and roads of this state, proclaiming from window or bumper stickers distributed by the Appellant in a promotional contest, “I USE DIXIE GAS”. Appellant contends that these two actions on its part support its claim to the exclusive use of the trade name “Dixie Gas” over the entire State of Mississippi.
The answer to that argument is that appellant’s service stations were mostly neighborhood stations serving local communities, and that its transport trucks were hauling gas from its bulk plant to these local stations and not traveling and thus advertising appellant’s products all over the State. The bumper stickers resulted from a “one shot” contest, and not from a continuous and persistent advertising campaign.
In any event, there is substantial evidence in the record supporting the Chancellor’s decision that the trade name “Dixie Gas” had not acquired a secondary meaning of appellant’s gas only, and had not thus become the exclusive property of appellant. The Chancellor was correct in finding that appellant and appellee were not in competition with each other because they operated in different trade territories with no overlap of territories. The Chancellor was correct in his decision not to apply the extraordinary remedy of a prohibitory injunction.
The judgment of the chancery court is, therefore, affirmed.
Affirmed.
All Justices concur.